UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No.: 06-22222-CIV  COOKE/BROWN

LUMBERMENS MUTUAL CASUALTY
COMPANY,

    *Plaintiff*,

v.

DADELAND COVE SECTION ONE
HOMEOWNERS' ASSOCIATION, INC.,
f/k/a DADELAND COVE HOMEOWNERS'
ASSOCIATION, INC., a Florida Non-Profit
Corporation, *et al.*,

    *Defendants/Counterplaintiffs*.
_____/

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

**UPON THE CROSS MOTIONS FOR SUMMARY JUDGMENT**, this Court rules in favor of the Defendants/Counterplaintiffs ("Defendants") and against the Plaintiff as discussed below.

Dadeland Cove is a typical condominium community where the owners own the condominiums individually but share the common areas. These common areas need a caretaker—an entity that would protect the fiduciary interests of the condominium owners apropos the common areas. Dadeland Cove Homeowners' Association ("Association") serves that purpose.

The Association hired Continental Group ("Continental") to maintain the common areas of the property. Continental, however, fell short on its duties. The common areas were left to deteriorate. And all the while, the Association failed to act. Neither did the Association enforce its contract with Continental nor did it sue Continental for breach. As a result, the Dadeland

Cove homeowners sustained significant restoration damages.

The restoration process wasn't pretty either.  The Association ignored its hired engineer's advice to use certain recommended materials to restore the building.  Rather, it approved only inferior materials, despite having sufficient funds to use the better, recommended ones.  This has resulted in ongoing damages.

The homeowners sued the Association in Florida state court for breach of fiduciary duty. To defend, the Association looked to Lumbermens Mutual Casualty Co. ("Lumbermens"), the insurer for the Association's Directors and Officers Policy ("Policy"), which, in part, provides:

> I.    INSURING AGREEMENT
> The Insurer shall pay in connection with a **Wrongful Act** which takes place before or during the **Policy Period** all **Loss** on behalf of any **Insured** which such **Insured** becomes legally liable to pay arising from any **Claim** for a **Wrongful Act** first made against such **Insured** during the **Policy Period** or Extended Reporting Period, if applicable, and reported in writing to the Insurer as soon as practicable after any **Insured** first becomes aware of such **Claim**, but in no event later than sixty (60) days after the expiration of the **Policy Period** or Extended Reporting Period, if applicable.

The Policy defines **Wrongful Acts** as follows:

> III.    DEFINITIONS
>
> \*\*\*
>
> M.    **Wrongful Act(s)** means:
> 1. any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by the Policyholder or any Insured Individual in their capacity as such; or
>
> 2. any matter claimed against any Insured Individual solely by reason of his or her capacity as such.

The Policy also includes several exclusions.  The one at issue here is an exclusion for liability coverage for property damage:

> IV.    EXCLUSIONS
>
> \*\*\*
>
> The Insurer shall not be liable for **Loss** arising from any **Claim** which is for:
>
> \*\*\*
>
> N.    loss of use, destruction of or damage to any tangible property, except for **Claims** which involve

2

**Construction Defects** and are thus subject to the exclusion set forth in Subsection IV.I.

Lumbermens, provided a defense for several years but then refused coverage and asked for its money back based on exclusion N. *See supra*. The instant action centers on a disagreement between Lumbermens and the Association regarding Policy coverage. Lumbermens has asked this Court to declare that under exclusion N, the Policy does not cover the Association for the underlying litigation against the homeowners. The Association, on the other hand, has argued that the Policy covers exactly the type of breach-of-fiduciary-duty suit that is the subject of the underlying litigation. Both parties have moved for summary judgment on the issue.

The interpretation of insurance contract provisions is a matter of law to be decided by the court. *Adelberg v. Berkshire Life Ins. Co.*, 97 F.3d 470, 472 (11th Cir. 1996) (citing *Gas Kwick, Inc. v. United Pac. Ins. Co.,* 58 F.3d 1536, 1538-39 (11th Cir. 1995)). A court should construe insurance policies liberally in favor of the insured and strictly against the insurer who prepared the policy; exclusionary clauses must be construed more strictly than coverage clauses. *Blue Cross and Blue Shield of Florida, Inc. v. Steck*, 778 So.2d 374, 376 (Fla. 2d DCA 2001). Furthermore, courts are to give effect to the intent of the parties as expressed in the policy language. If the policy is ambiguous, the ambiguity must be resolved liberally in favor of the insured and strictly against the insurer who prepared the policy. *Prudential Property and Cas. Ins. Co. v. Swindal*, 622 So.2d 467, 472 (Fla. 1993).

Turning to the case at hand, it is important to note, first, that a homeowners' association exists primarily the protect the homeowners' fiduciary interests in the common areas of a community—that is, the association bears the duty to protect and maintain the property

commonly shared by the owners. *See, e.g.,* Declaration of Covenants and Restrictions of Dadeland Cove, Article IV, § 3 and Article V, §§ 1 and 2.  So in the normal course, a breach of this fiduciary duty would likely result in property damage to common areas.  It would make sense, thus, for a homeowners' association to insure against such breaches so that the property as a whole not depreciate upon the association's wrongdoings.  Such was the Policy as at issue here. *Id*.

This Policy unequivocally provides coverage for damages resulting from, *inter alia*, a breach of fiduciary duty. *See supra*.  Since a breach of fiduciary duty would likely result in property damage, it nonsensical to say that this coverage excludes property damage.  In fact, property damage is precisely the type of damage a reasonable actor would insure for.  As such, the Court finds that the parties agreed upon coverage for loss, including property damage, based upon a claim for breach of fiduciary duty.

Lumbermens misses the mark in relying upon exclusion N because it is irrelevant to the situation at hand.  The provision only excludes coverage for "loss *arising from* any claim which is for loss of use, destruction of or damage to any tangible property"—in other words, for the damage that should be covered by general liability insurance, such as damage by a fire.  Lumbermens' interpretation puts the cart before the horse because *the origin* of the claim here is the breach of fiduciary duty, not the property damage.  This is not a case where the "loss arises from [a claim for tangible property damage]." *See supra*.  Rather, the loss here *is* the property damage that arises from a claim for breach of fiduciary duty—the exact scenario the Policy covers.  So to whatever little extent exclusion N muddies the coverage issue, if at all, the Court must resolve the ambiguity in favor of the insured . *See Swindal*, 622 So.2d at 472; *see also*

4

*Steck*, 778 So.2d at 376.  Any other result would render coverage so limited that it could not reasonably have been intended by the parties. *Id*.  Therefore, the Court hereby

**ORDERS and ADJUDGES** as follows:

1. Lumbermen's Motion for Summary Judgment [DE 31] is **DENIED**.

2. The Defendants' Summary Judgment Motion [DE 36] is **GRANTED** and accordingly, the Defendants are entitled to the coverage they claim.

3. As this Order has resolved all outstanding issues before this Court, the Clerk is directed to **CLOSE** the case.  All remaining motions not otherwise ruled upon are **DENIED** *as moot*.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 11th day of October 2007.

*[signature]*
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*The Hon. Stephen T. Brown*
*Counsel of Record*